# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## No. 13-2424

STAR INSURANCE COMPANY, Plaintiff-Appellant

v.

REGINELLA CONSTRUCTION COMPANY, LTD, et al., Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Pennsylvania
Civil Action No. 2-12-cv-01195

## BRIEF OF APPELLANT STAR INSURANCE COMPANY

On the Brief:      Paul T. DeVlieger, Esq.
DeVlieger Hilser, P.C.
1518 Walnut Street, Ste. 1610
Philadelphia, PA 19102
T. (215) 735-9181
F. (215) 735-9186
pdevlieger@dvhlaw.com

*Attorney for Appellants*

OCTOBER 5, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELATED CASES AND PROCEEDINGS . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    The General Indemnity Agreement . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Contract and The Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    The Reginella Entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    Reginella Construction Company - 1987 . . . . . . . . . . . . . . . . 9
        2.    Reginella Construction Company, Inc. - 1990 . . . . . . . . . . . 10
        3.    Reginella Construction, Ltd. - 2008 . . . . . . . . . . . . . . . . . . . 10

    D.    Defendant's Assertion that RCC is Exclusively the Trade Name for ReginellaInc is False and Prohibited in the Commonwealth of Pennsylvania . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    E.    The Kishmo's Subcontract with ReginellaLtd Establishes ReginellaLtd was the Prime Contractor on the Project . . . . . . . . . . . 12

    F.    Star's Claims Against the JR, DR and the Reginella Entities . . . . . 15

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.  The District Court Erred in Excluding Matters of Public
    Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II.  The Court Erred in Dismissing, With Prejudice, Count I -
     Contractual Exoneration and Indemnification, Count IV - Breach
     of Contract, and Count V - Declaratory Judgment . . . . . . . . . . . . . 24

     A.  The District Court Erred in Finding that There was No
         Ambiguity Regarding the Party Named in the Contract  . . . . 24

     B.  The Kishmo Contract Establishes the Subject Bonds
         Were Issued to ReginellaLtd  . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.  The District Court Erred in Dismissing Count II for Implied-In-Law
      Exoneration and Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      A.  Exoneration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      B.  Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IV.  Count IV - Conversion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

V.  The District Court Erred in Denying Plaintiff Leave to
    Amend the Pleadings  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# **TABLE OF CITATIONS**

## **CASES**

*Almi Inc. v. Dick Corporation*, 31 Pa. Commw. 218, 375 A.2d 1343 (1977) . . . . 27

*Antrobus v. Davidson*, 3 Mer. 569 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Ardesco Oil Co. v. N.A. Mining and Oil Co.*, 66 Pa. 374 (1870) . . . . . . . . . . . . 27

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
(*citing Twombly*, 550 U.S. at 556, 127 S.Ct. 1955) . . . . . . . . . . . . . . . . . . . . . 19-20

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) . . . . . . . . . . 21

*Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896 (1987), *alloc.
denied*, 516 Pa. 625, 532 A.2d 436 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,21

*Beaver v. Beaver*, 23 Pa. 167, 170 (1854) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

*Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951) . . . . . . . 29

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir.2011
(*quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010)) . . . . . 20

*Cock v. Ravii*, 6 Ves. Jr. 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Eisenhauer v. Clock Towers Associates*, 399 Pa.Super. 238,
582 A.2d 33 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Farm Credit Leasing Servs. Corp. v. Ferguson Packaging Mach., Inc.*,
No. CIV.A. 07-1900, 2007 WL 4276841, at *8 (E.D. Pa. Dec. 3, 2007) . . . . . . . 31

*Fid. & Deposit Co. of Maryland v. Royal Bank of Pennsylvania*, No. CIV.A.
02-2674, 2003 WL 21250558, at *3 (E.D. Pa. May 1, 2003) . . . . . . . . . . . . . . . . 33

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir.2009) . . . . . . . . . . . . . . 19

*Fullman v. Pennsylvania Dept. of Corrections*, 265 Fed.Appx. 44
(3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Great Am. Ins. Co. v. Geris*, 3 Pa. D. & C.4th 211, 220–21 (Com. Pl. 1987), *aff'd
sub nom. Great Am. Ins. v. Geris*, 377 Pa. Super. 661, 541 A.2d 1157 (1988) . . 28

*Gunzburger v. Rosenthal*, 226 Pa. 300, 75 A. 418 (1910) . . . . . . . . . . . . . . . . . . 34

*Hagans v. Constitution State Service Co.*, 455 Pa.Super. 231, 240,
687 A.2d 1145, 1149 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Heller v. Fulare*, 371 F.supp.2d 743, 746 (W.D.Pa. 2005) (*citing Alan Wright &
Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.2004)*) . . . . . . 35

*Humbird v. Davis*, 210 Pa. 311, 59 A. 1082 (1904) . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 273 (3d Cir.2004) . . . . . . . . . 19

*Martin v. Nat'l Sur. Corp.*, 437 Pa. 159, 166, 262 A.2d 672, 676 (1970) . . . . . . . 36

*Morse v. Lower Merion Sch.Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) . . . 20-21, 25

*Mountbatten Surety Co., Inc. v. AFNY, Inc.*, No. 99-2687,
2000 WL 375259, at *6-7 (E.D.Pa. Apr.11, 2000) . . . . . . . . . . . . . . . . . . . . . . . 31

*Nesbit v. Smith*, 2 Brown C.C. 579 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Norriton East Realty Corp. v. Central-Penn National Bank*, 435 Pa. 57,
254 A.2d 637 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Pearl Assurance Co. v. National Ins. Agency*, 151 Pa.Super. 146, 156,
30 A.2d 333, 337 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137, 83 S.Ct. 232, 235,
9 L.Ed.2d 190 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

iv

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) . . . . . . 20,25,30

*Phoenix Four Grantor Trust v. 642 N. Broad St. Associates*, No. 00-597, 2000 WL 876728, at *9 (E.D.Pa. June 29, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 375 n.7 (3d Cir. 2002) . . . . . 20,25

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010) . . . . . . . . . . . . . 20

*Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112 (1987) . . . . . . . . . . . . . 33

*Smith v. Harry*, 91 Pa. 119, 124 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Theobald's Principal & Surety* 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Transamerica Ins. Co. v. U.S.*, 989 F.2d 1188, 1194 (Ct.Cl. 1993) . . . . . . . . . . . 32

*Underhill Coal Mining Co. v. Hixon*, 438 Pa.Super. 219, 652 A.2d 343, 345 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*U.S. Fidelity and Guar. Co. v. United Penn Bank*, 362 Pa.Super. 440, 448, 524 A.2d 958, 962 (1987), *allocatur denied, U .S. Fidelity and Guar. Co. v. United Penn Bank*, 517 Pa. 609 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) . . . . . . . . . . . . . 22

## REGULATIONS/RULES/STATUES

*Fed.R.Civ.P. 8(a)(2)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. §§ 1332(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*28 U.S.C. § 1291.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*54 Pa.C.S.A § 301 et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*54 Pa.C.S.A. § 303(b)(2)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*62 Pa.C.S.A. § 903* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATEMENT OF JURISDICTION

Star Insurance Company, Appellant, appeals the final judgment entered by the District Court on April 18, 2013 that disposed of all parties' claims. (JA003) Appellants filed a Notice of Appeal in the District Court on May 15, 2013. (JA001-JA002) The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1). The District Court's dismissal with prejudice constituted a final order. Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1.    Whether the district court erred, as a matter of law, by excluding matters of public record in reaching a determination on Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

2.    Whether the district court erred, as a matter of law, in dismissing, with prejudice, Counts I, IV and V of the Complaint, which attempt to enforce the Indemnity Agreement against the Defendants.

3.     Whether the district court erred, as a matter of law, in dismissing, with prejudice, Count II of the Amended Complaint where Star properly stated claims for Implied-in-Law Exoneration and Indemnification.

4.      Whether the district court erred, as a matter of law, in dismissing, with prejudice, Count III of the Amended Complaint, where Star properly stated a claim for Conversion.

5.      Whether the district court erred in denying Plaintiff leave to file a second Amended Complaint.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The following cases are related to this matter insofar as the underlying facts arise out of various contracts, and surety bonds associated with the same public project involved in this action.  The following cases were filed in the Allegheny County Court of Common Pleas:

- *Reginella Construction Company v. The Board of Education of the School District of Pittsburgh, Pennsylvania*, GD-12-013591

- *Right Electric v. The Board of Education of the School District of Pittsburgh, Pennsylvania, et al.,* GD-12-010838

- *Kishmo Inc. v. Reginella Construction Company Ltd., et al.*, GD-11-01897

- *Kishmo Inc. v. Star Insurance Company*, GD-12-020348.

## STATEMENT OF THE CASE

This action was initiated by Star Insurance Company, ("Star"), alleging five (5) Counts against Donna M. Reginella ("DR"), Joseph A. Reginella ("JR"), Reginella Construction Company Ltd. ("ReginellaLtd"), Reginella Construction

2

Company Inc. ("ReginellaInc"), and Regnella Construction Company ("RCC") in the United States District Court for the Western District of Pennsylvania. (JA019-20, 23-52) Star's Amended Complaint alleged five counts against the Defendants, all of which arose out of the surety-principal relationship between Star and the Defendants. *Id.* All facts giving rise to this action stem from Star issuing Payment and Performance Bonds to ReginellaLtd for a public construction project. *Id.* Star incurred significant losses and further has potential exposure as a result of issuing these Bonds because ReginellaLtd failed to honor various contractual agreements in connection with the project. Prior to issuing surety bonds, Star requires every principal to execute an Indemnity Agreement that contractually binds the indemnitors to reimburse Star for any losses incurred as a result of issuing any surety bond on the principal's behalf. (JA024-25) Counts I and IV of Star's Amended Complaint sought recovery from the Defendants pursuant to the Indemnity Agreement. (JA029-31) Count II sought recovery for Implied-In-Law Exoneration and Indemnification. (JA029-30) Count III alleged conversion of funds, and Count V sought a declaration from the Court that the Indemnity Agreement was binding on the Defendants. (JA030-32)

As more thoroughly discussed herein, Plaintiff/Appellant Star filed this Appeal of the district court's Order granting the Defendants' Motion to dismiss

Plaintiff's Amended Complaint with prejudice, and denying Plaintiff leave to

amend the pleadings.

## I.    FACTUAL BACKGROUND

### A.    The General Indemnity Agreement

On October 15, 2008, ReginellaLtd, JR and DR executed a General

Indemnity Agreement, ("GIA"), to induce Star to issue performance and payment

bonds for a number of public construction projects to be performed in

Pennsylvania.  (JA024-25, 33-40)  As is the case with nearly all sureties, Star

requires, as a matter of course, that a principal execute an Indemnity Agreement as

a condition precedent to Star issuing any surety bond on their behalf.  The purpose

of the GIA is to add an additional layer of protection above and beyond the

common law rights that have always been recognized and available to a sureties –

and persons/entities that are called upon to respond to the debt or obligation of

another.  To be clear, a bond will not issue unless and until the principal and all

additional indemnitor(s) execute a GIA with Star.

The GIA binds the principal and indemnitors, jointly and severally, to

certain obligations, including cooperating with Plaintiff and reimbursing Plaintiff

for all costs, expenses and attorneys' fees as a result of Plaintiff's issuance of the

4

bonds and the enforcement of Plaintiff's rights under the Indemnity Agreement.

(JA033-40)  The GIA provides at Section II(A) that:

> [T]he Indemnitors further agree to exonerate, save harmless, indemnify, and keep indemnified the Surety from and against ANY AND ALL LOSS WHATSOEVER, including by not limited to all demands, claims, liabilities, damages, costs, charges, fees, expenses, suits, orders, judgments, adjudications, and any other Losses of whatever nature or kind which the Surety pays or incurs or for which the Surety becomes liable or has reason to believe it is, may be, or may become liable (whether or not the Surety shall have paid out any sums on account of such Losses), for any reason whatsoever, …

(JA033)  The GIA further provides at Section VI(A) that, upon the occurrence of a Jeopardy Event, Plaintiff may at its sole discretion, take any or all of the following actions, including but not limited to: (1) liquidate and apply any or all funds or collateral as may be deposited with or in the possession of the Plaintiff to the extent of Plaintiff's losses; (2) enforce its security interest; and (3) commence legal proceedings to enforce the GIA. (JA035)

The Principal – the entity requesting Star issue surety bonds on its behalf – was listed on the GIA as follows:

> Reginella Construction Company LTD
> 4700 McKnight Road
> Pittsburgh, PA 15237

5

(JA039) On October 15, 2008, named Defendant in this action, "Joseph A. Reginella, President" executed the GIA on behalf of the Principal. *Id.* JR and DR also executed the GIA as individual indemnitors. (JA040) The exclusive purpose of the Defendants executing the GIA is to induce Star to issue surety bonds on the Principal's behalf. (JA024)

### B.    The Contract and The Bonds

On February 25, 2009, ReginellaLtd entered into Contract No. 0F9206, ("the Contract"), with the Board of Public Education for the School District of Pittsburgh, ("the District"), which required ReginellaLtd to provide all materials and perform all labor to complete work at a project known as "New Building Addition/Renovations at the Concord Elementary School", ("the Project"). (JA026, 130-31) The Contract was awarded to ReginellaLtd for a total of $10,399,00.00. *Id.* As with any public construction project of this magnitude, the contractor is required to obtain a surety bond guaranteeing completion of the public project. The Commonwealth Procurement Code, at *62 Pa.C.S.A. § 903*, provides:

> When a construction contract is awarded in excess of $100,000, the following bonds **shall** be delivered to the purchasing agency and shall be binding on the parties upon the execution of the contract:...
>
> (2) A payment bond, executed by a surety company authorized to do business in this Commonwealth and made payable to the Commonwealth, in an amount equal to 100%

6

of the price specified in the contract and conditioned upon the prompt payment for all materials furnished or labor supplied or performed in the prosecution of the work. Labor or materials include public utility services and reasonable rentals of equipment for the periods when the equipment is actually used at the site.

**(b) Protection.--**A performance bond shall be solely for the protection of the purchasing agency which awarded the contract. *A payment bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded or to any of its subcontractors in the prosecution of the work provided for in the contract, whether or not the labor or materials constitute a component part of the construction.*

*Id.* If the contractor – in this case, ReginellaLtd – was unable to secure bonding, it could not enter into this Contract worth more than ten million dollars.

Relying on the promises made in the GIA, on April 20, 2009, Star issued Performance and Payment Bond No. SSB0451624 ("Bonds" or "Subject Bonds") on Defendants' behalf for the Project. (JA026, 41-44) The Bonds were issued to "Reginella Construction Company*,* 4700 McKnight Road, Pittsburgh, PA 15237, a contractor, as Principal, hereinafter referred to as the Contractor." (JA041-44)

The Contract refers to only *Reginella Construction Company* and notes that its offices are located at 4700 McKnight Road, Pittsburgh, Pennsylvania. *Id.* The Contract was drafted using a boilerplate pre-printed form used by the District on public projects at that time. The standard form contract states the parenthetical

7

"(a corporation)" after the space designated for the contractor's name.  After the

contractor was added to the Contract, the document appeared as follows:

> **Reginella Construction Company**, (a corporation), with offices located at 4700 McKnight Road, Pittsburgh, PA 15237, hereinafter referred to as the Contractor

(JA130) (Emphasis in original) Compare this to the District's contract with Right

Electric, Inc., which appeared as follows:

> **Right Electric, Inc.,** (a corporation), with offices located at 317 Meridian Road, Butler, PA 16001, hereinafter referred to as the Contractor

(JA081) The parenthetical, "(a corporation)" appears here as well.  Notably, Right

Electric included its designation "Inc" which would render the redundant

parenthetical entirely superfluous – however, as this is a boilerplate form, the

parenthetical designation "(a corporation)" remained on the document.  (JA081)

With respect to the RapinellaLtd Contract with the District, this boilerplate

parenthetical is the single instance where Reginella Construction Company is listed

as "(a corporation)" in conjunction with any of the Contract documents or the

Subject Bonds.  Indeed, JR executed the Contract on behalf of the following:

CONTRACTOR:    Reginella Construction Company

(JA131) Significantly, the Contractor was not listed as ReginellaInc on the signature page, nor did the word "corporation" appear again in any contract documents in conjunction with Reginella Construction Company.

The Bonds designate the District as the Obligee and "Reginella Construction Company, 4700 McKnight Road, Pittsburgh, PA 15237, a contractor, as Principal..." (JA041-44)  Furthermore, JR signed the Bonds on behalf the Principal.  *Id.*  Accordingly, while both the Contract and the Bonds do not make reference to the designator "Ltd.," they both list the correct address of ReginellaLtd and were also executed by ReginellaLtd's President.

### C.    The Reginella Entities

The contractor appearing on both the Contract and the Bonds is listed as *Reginella Construction Company*.  Neither designation "Inc" nor "Ltd" appear on the Contract documents or the Bonds.  Understanding the filing history of RCC, ReginellaInc and ReginellaLtd is necessary to making a determination on Defendants' Motion to Dismiss.  For clarity, they will be discussed chronologically from earliest in creation to most recently created.

### 1.    Reginella Construction Company – 1987

RCC is a Fictitious Name registered with the Pennsylvania Bureau of Corporations in March of 1987.  (JA150)  JR is listed as the "owner" of this

Fictitious Name, and RCC's Principal Place of Business is listed as "834

Greenfield Avenue, Suite 1, Pittsburgh PA 15217-0." (JA150)

### 2.    Reginella Construction Company, Inc. – 1990

In June of 1990, JR and his brother, Thomas J. Reginella, ("TR"), created

ReginellaInc.  (JA149).  The registered office address of ReginellaInc is the same

as that of RCC, "834 Greenfield Avenue, Suite 1, Pittsburgh PA 15217-0."

(JA149)  JR is listed as the President, and TR is listed as the Treasurer of

ReginellaInc.

### 3.    Reginella Construction Company, Ltd. – 2008

In March 2008, ReginellaLtd was registered with the Bureau of

Corporations.  (JA148)  The filing history does not list any officers, but does list

Regcon Corp. as a general partner, with its mailing address located at "4700

McKnight Road, Pittsburgh PA 15237."  Notably, unlike RCC and ReginellaInc,

the registered office address of ReginellaLtd is "4700 McKnight Road Pittsburgh

PA 15237," the same address appearing on the Contract and the Bonds.  (JA148-

50) To be clear, ReginellaLtd is the only Reginella Entity with its registered office

located at the address appearing on the Contract and the Bonds.

### D.    Defendant's Assertion that RCC is Exclusively the Trade Name for  ReginellaInc is False and Prohibited in the Commonwealth of Pennsylvania

In their Motion to Dismiss, Defendants baldly assert that RCC is the trade name exclusively used by ReginellaInc.  On its face, this cannot be true.  The use of Fictitious Names is governed by the Fictitious Names Act of 1982, *54 Pa.C.S.A § 301 et seq* ("the Act").  *54 Pa.C.S.A. § 303(b)(2)* states that  any entity which either alone or in combination with any other entity conducts any business in this Commonwealth under or through any Fictitious Name *shall register* the Fictitious Name under this chapter and *shall amend such registration* whenever necessary to maintain the accuracy of the information disclosed thereby.  Recall that RCC was registered in 1987 as the Fictitious Name of JR – the individual.  The Act explicitly requires the entity that wishes to conduct business as the Fictitious Name, to register such name and identify the owner/operator of such Fictitious Name.  At the time RCC was created, neither ReginellaInc nor ReginellaLtd existed. (JA148-50) Furthermore, the RCC Fictitious Name filing was never amended to permit either ReginellaInc or ReginellaLtd to do business as RCC. *Id.*

Despite the requirements in the Act, the record shows that multiple Reginella Entities have been ostensibly operating as RCC with complete disregard for corporate formalities in place to distinguish one legal entity from another.  Indeed,

11

both ReginellaInc and ReginellaLtd have conducted business as RCC. (JA068-92, 202-213)  While only ReginellaLtd has a registered address at "4700 McKnight Road Pittsburgh PA 15237," both ReginellaLtd and ReginellaInc share the same physical address, the same officers, the same telephone number, the same facsimile number and the same website.  The only distinguishing factor from the corporate filings that might distinguish ReginellaInc is the registered office address at "834 Greenfield Avenue," however, this location has not been in the Defendants' possession for several years.

### E.    The Kishmo's Subcontract with ReginellaLtd Establishes ReginellaLtd was the Prime Contractor on the Project

As prime contractor, ReginellaLtd entered into several subcontracts with various entities to perform work on the Project.  Payment disputes arose when ReginellaLtd failed to compensate its subcontractors for their services, and lawsuits were filed against ReginellaLtd for breach of the various subcontracts, and against Star for Payment Bond Claims.  Two such lawsuits were filed by Kishmo, Inc. ("Kishmo") in the Allegheny County Court of Common Pleas – *Kishmo Inc. v. Reginella Construction Company Ltd.*, GD-11-01897, and *Kishmo Inc. v. Star Insurance Company*, GD-12-020348.

Kishmo entered into a subcontract with ReginellaLtd ("Kishmo Subcontract") for work on the Project.  The Kishmo Subcontract is a public record

because it was attached as an exhibit to the two (2) complaints filed by Kishmo in

the Allegheny County Court of Common Pleas.  The Kishmo Subcontract provides

in relevant part:

> This Agreement, made the  2nd  day of _____June____
> ____ in the year two thousand and Nine by and between
> **Reginella Construction Company Ltd,** having its
> principal place of business at 4700 McKnight Road,
> Pittsburgh, PA 15237
> **(hereinafter called "RCC")** and
> Kishmo Inc
> 166 Shelby Lane
> Apollo PA 15613
> (hereinafter called "Subcontractor").
>
> ***
>
> (hereinafter called the Subcontractor's Work) for and at
> the ADDITIONS AND RENOVATIONS AT
> PITTSBURGH CONCORD K-5 SCHOOL (hereinafter
> called the "Project"), located at 2350 BROWNSVILLE
> ROAD, PITTSBURGH PA 15210 (hereinafter called the
> "Premises"), as shown and described in and strict
> accordance with the Plans, Specifications, General
> Conditions, Special Conditions and Addenda thereto
> prepared by L. ROBERT KIMBALL &
> ASSOCIATES...and *with the terms and provisions of*
> *the General Contract (hereinafter called the "General*
> *Contract") between RCC and THE PITTSBURGH*
> *BOARD OF PUBLIC EDUCATION . . . dated*
> *February 25, 2009 . . .*

(JA202) (Emphasis Added). JR is clearly listed as the President of ReginellaLtd on the Kishmo Subcontract and he executed the same in his capacity as President of ReginellaLtd. (JA211)

The Kishmo Subcontract is significant for several reasons. Initially, it amounts to an admission that ReginellaLtd was the prime contractor on the Project, and therefore the Contract was issued on behalf of ReginellaLtd, and the Bonds for the Project were also issued to ReginellaLtd. Additionally, the Kishmo Subcontract shows that the Defendants indiscriminately and improperly use RCC to reference multiple Reginella Entities, which did not exist in 1987, when RCC was registered as a Fictitious name. (JA202-11)

Throughout the duration of this Project, ReginellaLtd has operated and conducted business as RCC. The Kishmo Subcontract contains the logo "RCC" on the top of the first page, and Fictitious Name "Reginella Construction Company" is then listed underneath the logo. (JA202) The first paragraph of the Kishmo Subcontract states that the same are being entered into by ***"Reginella Construction Company, Ltd., having its principal place of business at 4700 McKnight Road, Pittsburgh, PA 15237 (hereinafter called "RCC") . . . "*** (JA202) At the bottom of the first page of each of the Kishmo Subcontract, the website www.reginellacc.com is listed. *Id.* Reviewing the website, the Fictitious Name RCC is the only entity

14

referenced.  The "RCC" website lists "Featured Projects" and the first job

mentioned is the Project forming the basis for this suit. (JA259)

### F.    Star's Claims Against the JR, DR and the Reginella Entities

In connection with the Project and the Bonds, Star received Payment and

Performance Bond claims which caused Star to incur losses, and further would

expose Star to greater potential losses.  (JA026-32)  Accordingly, acting on the

powers granted to Star pursuant to the GIA, which was executed by JR, DR and

ReginellaLtd for the purpose of inducing Star to issue surety Bonds, Star initiated

this action against the Defendants.

## II.    <u>PROCEDURAL HISTORY</u>

On August 20, 2012 Star filed a Complaint against DR, JR, and

ReginellaLtd, in the United States District Court for the Western District of

Pennsylvania.  (JA019-20)  A summons was issued as to all named defendants, but

the Complaint was never served.  (JA019-20)  On November 13, 2012, Star filed

an Amended Complaint against DR, JR, ReginellaLtd, and ReginellaInc t/d/b/a

RCC.  (JA019-20, JA023-52)  On November 29, 2012, opposing counsel, Peter

Kurzweg, Esq., accepted service of the Summonses and Amended Complaint on

behalf of all named Defendants. (JA019-20)

15

Star's Amended Complaint alleged five counts against the Defendants. (JA023-32) Counts I and IV of Star's Amended Complaint sought recovery from the Defendants pursuant to the Indemnity Agreement.  (JA029-31)  Count II sought recovery for Implied-In-Law Exoneration and Indemnification. (JA029-30)  Count III alleged conversion of funds, and Count V sought a declaration from the Court that the Indemnity Agreement was binding on the Defendants. (JA030-32)

On January 4, 2013, the Defendants filed a *Motion to Dismiss Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and, in the Alternative, Motion for More Definite Statement Pursuant to Fed.R.Civ.P. 12(e)*, and Brief in support thereof ("Motion to Dismiss").  (JA020, JA053-110) Specifically, the Defendants claimed that there was no contractual liability because the principal contractor that executed the GIA was ReginellaLtd and the Payment and Performance Bonds were issued to "Reginella Construction Company," which, of course, were intended for ReginellaLtd.  Defendants took the position that RCC and ReginellaLtd are entirely different entities, and therefore, the argument continued, the Defendants are not liable because the Bonds were not issued to ReginellaLtd, and the GIA only applies to surety bonds issued *to the principal* – ReginellaLtd. (JA056-57)  Defendants also alleged Star could not recover on the bases of Implied-In-Law Exoneration

and Indemnification, and that Star could not establish a *prima facie* case for Conversion.

On January 17, 2013, a Notice of Substitution of Attorney was filed whereby the undersigned entered their Appearance on behalf of Star and became involved in this case for the first time. (JA020)

On February 11, 2013 Star filed its *Response in Opposition to Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and, in the Alternative, Motion for More Definite Statement Pursuant to Fed.R.Civ.P. 12(e)*, and Memorandum of Law in support thereof ("Star's Response"). (JA020, JA111-274, JA275-93)  Star's Response included several exhibits of court documents, business filing histories, public contracts, excerpts from the Defendants' website, other matters of public record and documents essential to Plaintiff's claims.  Star's Response explained, *inter alia*, the company that was actually awarded the public contract and to which Star issued Bonds was ReginellaLtd.  Furthermore, the Defendants have been playing a proverbial shell game with several registered entities that all have similar names for the purpose of avoiding liability. (JA272) Star explained that *Reginella Construction Company* is the Fictitious Name registered in 1987, *Reginella Construction Company Inc*. was registered in 1990, *Reginella Group, Inc*. was registered in 1994, *Reginella*

17

*Development* is a Fictitious Name registered in 1984, *Reginella Corporation* was

registered in 1986, and most notably *Reginella Construction Company Ltd* was

registered in 2008 (collectively referred to as the "Reginella Entities").  (JA272)

The Reginella Entities have the same physical address, same board

members, same telephone number, fax number and website.  In other words, they

have disregarded any corporate formalities that would distinguish one Reginella

Entity from another.  (JA286-90)  Finally, with regard to the remaining Counts,

Star maintained that its Amended Complaint indeed properly alleged facts capable

of supporting claims for Implied-In-Law Exoneration and Indemnification as well

as Conversion.  (JA290-93)  In the alternative, Star requested leave to amend its

pleadings to more precisely state its causes of action against the Defendants.

On April 18, 2013, the Honorable Terrence F. McVerry issued a fifteen (15)

page "Memorandum Opinion and Order of The Court" wherein he granted the

Defendants' Motion to Dismiss.  (JA04-17)  Additionally, Judge McVerry refused

to consider several documents attached to Star's Response.  As noted in the

Opinion, the sole basis upon which the Motion was granted was the omission of

the designator "Ltd." from the Contract and the Bonds.  (JA013-14)  In Judge

McVerry's view, ReginellaLtd was not a party to the Bonds or the contract for the

project.  (JA014) Count II - Implied-in-Law Exoneration and Indemnification was

also dismissed, as was Count III for conversion.  (JA014-16) Finally, Judge

McVerry denied Star's request for leave to amend its pleadings, reasoning "it

would be futile."  (JA016-17)

## STANDARD OF REVIEW

An Order granting a motion to dismiss is reviewed *de novo*. *In re Adams*

*Golf, Inc. Secs. Litig*., 381 F.3d 267, 273 (3d Cir.2004) ("This Court reviews Rule

12(b)(6) dismissals de novo, accepting all well-pleaded allegations as true and

drawing all reasonable inferences in favor of plaintiffs.").  Indeed, this Court has

plenary review over the grant of a motion to dismiss. *Fowler v. UPMC Shadyside*,

578 F.3d 203, 206 (3d Cir.2009). To survive a motion to dismiss, the plaintiff must

provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). The plaintiff

must allege "enough facts to state a claim to relief that is plausible on its face." *Id.*

at 570, 127 S.Ct. 1955. This standard requires the plaintiff to show "more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at

556, 127 S.Ct. 1955).  *Twombly* and *Iqbal* require us to take the following three

steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir.2011)(*quoting Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir.2010))(alterations and internal quotation marks omitted).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P. 8(a)(2)*.  In considering a motion to dismiss under Rule 12(b)(6), a court is required to "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (*quoting Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 375 n.7 (3d Cir. 2002)).  In a complaint, a district court is supposed to accept not only all allegations as true but all inferences arising from the allegations as true.  *Morse v. Lower Merion Sch.Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *See also Fullman v. Pennsylvania Dept. of Corrections*, 265 Fed.Appx. 44 (3d Cir. 2008).

20

Since *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleading standard has changed slightly.  However, the Third Circuit Court of Appeals has revised the pleading standard since *Twombly* and has determined that "under our reading [of *Twombly*], the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally stated and apply the Rule 12(b)(6) standard, attentive to context and a showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Phillips, supra at* 233 (internal citations omitted).  Put simply, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up as follows: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id. at* 234 (internal citations removed).

The Court must consider the Complaint in its entirety and review the allegations as a whole and in context.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are

based upon those documents and matters of public record. *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007). The Court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, n. 2 (3d Cir. 1993).

When a 12(b)(6) motion is granted, a district court should not dismiss the civil action but instead provide the claimant at least one opportunity to amend the defective complaint.

## ARGUMENT

## I.    The District Court Erred in Excluding Matters of Public Record

In resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or are essential to a plaintiff's claim which are attached to a defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

In its Memorandum Opinion, the district court expressly noted that *court documents* attached to Star's Response in Opposition to the Motion to dismiss may be considered by the Court without converting the motion to dismiss into a motion for summary judgment. (JA010) Consistent with this determination, the district

court considered an amended complaint and attached exhibits from Allegheny

County Court of Common Pleas case, *Reginella Construction Company v. The

Board of Education of the School District of Pittsburgh, Pennsylvania*, GD-12-

013591 (consolidated with GD-12-010838).  (JA010, JA151-86)

Paradoxically, the district court did not take into consideration, court

documents from other cases filed in Allegheny County Court of Common Pleas

that Star included in its Response to the motion to dismiss.  Specifically, the

district court refused to consider a contract between Kishmo Inc. and ReginellaLtd

("Kishmo Contract"), which was attached to Star's Response to the motion to

dismiss. (JA010, JA202-13) The Kishmo Contract falls within the *court documents*

category of public records that may be considered by the court in evaluating a

motion to dismiss.  Indeed, the Kishmo Contract was the subject of two (2) state

court lawsuits.  On April 11, 2012, the Kishmo Contract was attached to a

complaint filed in Allegheny County Court of Common Pleas case, *Kishmo Inc. v.

Reginella Construction Company Ltd.*, GD-11-01897.  Subsequently, on October

24, 2012 the Kishmo Contract was attached as an exhibit to the complaint filed by

Kishmo in Allegheny County Court of Common Pleas case, *Kishmo Inc. v. Star

Insurance Company*, GD-12-020348.  Consequently, the Kishmo Contract was

originally made a public record on April 11, 2012.  Star filed its Response to the

23

motion to dismiss on February 11, 2013, at which time the Kishmo Contract was a

public record.  Accordingly the district court should have considered the Kishmo

Contract in reaching a determination on the motion to dismiss. (JA123)

## II.    The District Court Erred in Dismissing, With Prejudice, Count I - Contractual Exoneration and Indemnification, Count IV - Breach of Contract, and Count V- Declaratory Judgment

### A.    The District Court Erred in Finding That There was No Ambiguity Regarding the Party Named in the Contract

As explained above, there are at lease six (6) registered Reginella

Entities/Fictitious Names currently in existence.  All of the Reginella Entities uses

the word "Reginella," and three (3) contain the words "Reginella Construction

Company."  With this in mind, the district court held:

> Star argues that although the Bonds were signed by
> "Reginella Construction Company," RCC was intended
> to mean Reginella Ltd, as RCC is a fictious name used by
> both RCC and Reginella Ltd. However, as the Contract
> specifically states RCC is a "corporation." It is not
> disputed that Reginella Ltd is a limited partnership.
> Therefore, the Court finds and rules that there appears to
> be no ambiguity regarding the named party to the
> Contract.

(JA013).  The district court is referring to the single instance in the contract

documents, on the District's boilerplate form, where the parenthetical "(a

corporation)" appears.  As stated above, neither designation "Inc" nor "Ltd" ever

appears in the contract documents, and Reginella Construction Company is the

24

registered Fictitious Name for Joseph A. Reginella, the individual.  All remaining

contract documents refer only to RCC.  The Bonds were also issued to RCC, by

Star, who requires its principal to execute an Indemnity Agreement before issuing

any surety bond.  (JA024)

In considering a motion to dismiss under Rule 12(b)(6), a court is required to

"'accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief.'" *Phillips, supra at* 233

(quoting *Pinker supra* at 374 n. 7). Additionally, a district court is supposed to

accept not only all allegations as true but all inferences arising from the allegations

as true.  *Morse, supra*, at 906; and *Fullman supra at 44.*  The Amended Complaint

clearly states that the GIA was executed in consideration for issuing the Subject

Bonds.  (JA024) Accepting this as true, there is a strong inference that the parties

believed the GIA would indemnify Star for any losses incurred in connection with

issuing these Bonds, and therefore RCC is intended to refer to ReginellaLtd.

Despite the foregoing, and despite the fact that "Inc" never appeared on any of the

contract documents, the district court determined, *at the pleading stage*, that the

Contract was unambiguously issued to ReginellaInc.  To suggest there is no

question as to whether the Contract was awarded to ReginellaInc, and not to

25

ReginellaLtd or RCC is simply giving deference to the movant. Respectfully, the district court erred in this regard.

## B. The Kishmo Contract Establishes the Subject Bonds Were Issued to ReginellaLtd

For reasons discussed above, the Kishmo Subcontract should have been considered in the district court's analysis. The Kishmo contract strongly suggests the Bonds were issued to ReginellaLtd. As explained, the Kishmo Subcontract is a significant document because it establishes ReginellaLtd was the prime contractor on the Project. Indeed, the Kishmo Contract clearly states the General Contract was between ReginellaLtd and the District. *See supra at 13.* Accordingly, the Contract for the Project was issued to ReginellaLtd, and therefore the Bonds were also issued to ReginellaLtd as Bonds were required for this Public Project. The fact that the Kishmo Subcontract identifies ReginellaLtd as the prime contractor for the Project, essentially establishes the Bonds were issued to ReginellaLtd, and that all parties to this litigation intended for Star to issue Bonds for ReginellaLtd. This fact coupled with Star requiring the Defendants execute the GIA for the purpose of inducing Star to issue surety bonds to ReginellaLtd strongly suggests the Subject Bonds were issued to ReginellaLtd. This determination is to be made viewing all facts in the light most favorable to Star – under those parameters, Defendants' Motion to Dismiss should have been denied.

26

**III.    The District Court Erred in Dismissing Count II for Implied-In-Law Exoneration and Indemnification**

**A.    Exoneration**

As long as sureties have existed in law, they have been endowed with common law rights of exoneration and indemnification.  "As soon as the surety's obligation to pay becomes absolute, he is entitled in equity to compel an exoneration, although the creditor has not demanded payment from him: *Theobald's Principal & Surety* 226; *Nesbit v. Smith*, 2 Brown C.C. 579; Lee v. Brook; Mosely R. 318; *Story's Equity* 327."  *Beaver v. Beaver*, 23 Pa. 167, 170 (1854); *See also, Ardesco Oil Co. v. N.A. Mining and Oil Co.*, 66 Pa. 374 (1870), and *Almi Inc. v. Dick Corporation*, 31 Pa. Commw. 218, 375 A.2d 1343 (1977). Exoneration, like a bill *quia timet*, is a remedy provided by equity because a party is entitled to free and clear use of his property and should not be faced with illegal or potential encumbrances thereto. In *Smith v. Harry*, 91 Pa. 119, 124 (1879), the Supreme Court stated:  "In an early case it was said: 'Although the surety is not troubled or molested for the debt, yet at any time after the money becomes payable, the court will decree the principal to discharge it, it being unreasonable that a man should always have such a cloud hanging over him ...'"(citations omitted).  In all cases where a court of equity has ordered exoneration, however, the obligation of the surety has been made absolute; exoneration is not a proper remedy when there

is no legal duty which requires the surety to make payment to the creditor. As the court stated in *Beaver, supra*, at 170: "[T]he surety would not be entitled to exoneration before the debt became payable, because it is implied by the contract that he engaged to stand bound for the principal until the maturity of the obligation: *Cock v. Ravii*, 6 Ves. Jr. 283; *Antrobus v. Davidson*, 3 Mer. 569; *Theobald*, 227." *Great Am. Ins. Co. v. Geris*, 3 Pa. D. & C.4th 211, 220–21 (Com. Pl. 1987), *aff'd sub nom. Great Am. Ins. v. Geris*, 377 Pa. Super. 661, 541 A.2d 1157 (1988).

Initially, there can be no dispute that Star issued the Subject Bonds to one of the Reginella Entities. Accordingly, a surety-principal relationship exists between the two parties, and Star is entitled to the protection of all causes of action available to sureties at common law. Plaintiff's Amended Complaint clearly establishes that, to date, it has received claims in excess of $365,00.00 against the Payment Bond issued for the subject Project, which are payable. (JA026) The Amended Complaint further established that Star received Performance Bond claims. (JA026) Collectively, the claims made against Star as a result of the Defendants' failure to perform its obligations on the Project exceed $650,000.00. (JA026-32) Star was entitled to implied-in-law exoneration from Defendants upon receipt of bond claims arising out of the Project. After receiving the payment and

performance bond claims on the Project, Star's obligation became payable, and its common law right of exoneration was vested. Accordingly, Star stated a claim for Implied-in-Law Exoneration.

## B.    Indemnification

The right of indemnity rests upon a difference between the primary and the secondary liability of two entities each of whom is made responsible to a third party. It is a right which enures to an entity who, without active fault on its own part, has been compelled, by reason of some legal obligation, to pay damages as a result of the acts of the person and/or entity with primary liability. *See Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951). To establish its claim for indemnity, a plaintiff must show that (1) it paid damages to an injured third party; (2) it was obligated to pay the damages to that party; and (3) its culpability was secondary to that of the defendant. *Rubin Quinn, supra at 931*.

In its Amended Complaint, Star has stated a claim for Implied-in-Law Indemnification. On multiple occasions, the Amended Complaint references "Losses" which Plaintiff "has incurred" in connection with the claims made against the Bonds. (JA027, JA030) As surety, Star was obligated to satisfy any cognizable claim made by any claimant against the Subject Bonds. These claims only arise after the principal – Defendant(s) – failed to honor the primary

obligations under contracts relative to the Subject Bonds. At this stage of the

proceeding, the district court was to "determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." *Phillips, supra* at

233. Further, any ambiguity is resolved in Star's favor, and Star is entitled to any

reasonable inference  arising from the facts alleged. On the facts alleged in the

Amended Complaint, Star has certainly stated a claim for Implied-in-Law

Exoneration and Indemnification.

## IV.    <u>Count III - Conversion</u>

The district court erred in dismissing Star's conversion claim. Reviewing

this issue, the district court's findings appear to be contradictory. Indeed, the

district court held that Star's rights to the funds were acquired through contract.

(JA016) This, however, directly contradicts the district court's findings on Count

II, where Judge McVerry held there was no express contract between Star and the

defendants. (JA015) This contradiction is critical because plaintiff's conversion

count was dismiss based on the "gist of the action" doctrine, whereby a plaintiff is

prohibited from recasting its breach of contract claim for a tort claim (to broaden

the scope of available damages).[1]  Under the "gist of the action" doctrine, federal

---

[1] This section shall not be construed to take any position on Star's allegation of conversion in the event the GIA is held to be an enforceable agreement in this matter.

courts, applying Pennsylvania law, have dismissed conversion claims where such claims are based on rights arising from an actual contract. *See, e.g., Phoenix Four Grantor Trust v. 642 N. Broad St. Associates*, No. 00-597, 2000 WL 876728, at *9 (E.D.Pa. June 29, 2000) (counterclaim plaintiffs have claim for breach of contract rather than claim for conversion where rights to excess rents were created by contract); *Mountbatten Surety Co., Inc. v. AFNY, Inc.*, No. 99-2687, 2000 WL 375259, at *6-7 (E.D.Pa. Apr.11, 2000) (no conversion claim where rights to the issued bond were governed by enforceable contract); *Farm Credit Leasing Servs. Corp. v. Ferguson Packaging Mach., Inc.*, No. CIV.A. 07-1900, 2007 WL 4276841, at *8 (E.D. Pa. Dec. 3, 2007).

If, as the district court found, no agreement of indemnity existed between Star and the principal, then Star's conversion claim cannot be based on the GIA – the contract giving Star the right to contract balances.  Applying the findings of the district court, Star's conversion claim would not be based in contract, and therefore such a claim could not be barred by the "gist of the action" doctrine.[2]

---

[2] Star specifically disputes the notion its contract claims are barred for any reason. Star, however, notes that dismissing its contract claims based on a finding that the Bonds were issued to ReginellaInc, and the GIA was signed by ReginellaLtd would contradict a finding that the "gist of the action" doctrine bars Star's conversion claim.

The two remaining "contracts" referenced by district court in its Memorandum Opinion are the Subject Bonds. Star's right to contract balances arises out of suretyship, which was memorialized in the Subject Bonds. Its subrogation rights to contract balances, however, are born out of longstanding equity principles deeply rooted in suretyship. The general rule is that "a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). Unlike much of government contract law, "the doctrine of equitable subrogation finds its roots not in statutory law but in the judicial commitment to providing fairness and equity among competing claimants." *See  Transamerica Ins. Co. v. U.S.*, 989 F.2d 1188, 1194 (Ct.Cl. 1993). Subrogation adheres when the surety has paid claims *or incurred loss* by reason of the suretyship. *Hagans v. Constitution State Service Co.*, 455 Pa.Super. 231, 240, 687 A.2d 1145, 1149 (1997); *U.S. Fidelity and Guar. Co. v. United Penn Bank*, 362 Pa.Super. 440, 448, 524 A.2d 958, 962 (1987), *allocatur denied, U .S. Fidelity and Guar. Co. v. United Penn Bank*, 517 Pa. 609 (1987). *Fid. & Deposit Co. of Maryland v. Royal Bank of Pennsylvania*, No. CIV.A. 02-2674, 2003 WL 21250558, at *3 (E.D. Pa. May 1, 2003). The Amended

32

Complaint plainly stated that Star had suffered damages in excess of $75,000 as a direct result of the suretyship. (JA027)

Conversion is defined under Pennsylvania law as: "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964); *Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896 (1987), *alloc. denied*, 516 Pa. 625, 532 A.2d 436 (1987). Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of specific intent to commit a wrong. *Norriton East Realty Corp. v. Central-Penn National Bank*, 435 Pa. 57, 254 A.2d 637 (1969).*Underhill Coal Mining Co. v. Hixon*, 438 Pa.Super. 219, 652 A.2d 343, 345 (1994). Pennsylvania Courts have held that money may be the subject of conversion when the failure to deliver the same results in the deprivation of another's right. *See Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112 (1987). *See also, Pearl Assurance Co. v. National Ins. Agency*, 151 Pa.Super. 146, 156, 30 A.2d 333, 337 (1943). Furthermore, the party seeking to recover on theory of conversion need not be owner of property claimed to be converted. *See Eisenhauer v. Clock Towers Associates*, 399 Pa.Super. 238, 582 A.2d 33 (1990), *See also Gunzburger v.*

*Rosenthal*, 226 Pa. 300, 75 A. 418 (1910).   Accordingly, monies to which a surety

is equitably subrogated can form the basis of a claim for conversion.

Here, the Amended Complaint properly alleged that it has incurred damages

as a result of the suretyship with the Defendants.  (JA030) The Amended

Complaint further stated that all Reginella Entities were on notice Star had

received claims – Star even demanded reimbursement for losses and that the

Defendants post collateral to offset Star's exposure. (JA027) At that time,

subrogation adhered to the contract balances and Project funds in Defendants

possession.  Despite Star's rights to those funds, and after receiving notice of Star's

demand for those funds Defendants exercised possession and control of said funds

and used the same for non-Project obligations.  Accordingly, Star has properly

stated a claim for conversion.

## V.    <u>The District Court Erred in Denying Plaintiff Leave to Amend the Pleadings</u>

When a 12(b)(6) motion is granted, a district court should not dismiss the

civil action but instead provide the claimant at least one opportunity to amend the

defective complaint.  Only when further amendment would be futile, an action or

claim may be dismissed with prejudice.  *Heller v. Fulare*, 371 F.supp.2d 743, 746

(W.D.Pa. 2005) (*citing Alan Wright & Arthur R. Miller, Federal Practice and*

*Procedure § 1357* (3d ed.2004)).  While Plaintiff has already filed an Amended

Complaint, the original complaint was never served in this matter, and was never subject to any judicial review.[3]  Plaintiff is sensitive to the volume of pleadings under review by the district courts, and the necessity of judicial efficiency. Plaintiff does not make this request to amend lightly.  In this instance, however, justice requires Plaintiff be permitted to amend its pleadings.  Courts of this Circuit have held cautioned district courts not be quick to dismiss appellant's complaint in a complicated action such as this, especially considering the amount of damages caused by the Defendants.  Assuming *arguendo* this Court finds Star's Amended Complaint did not state its claims with the requisite specificity, Star should be permitted to amend its pleadings to state, with greater particularity, its causes of action against the Defendants. *See e.g., Humbird v. Davis*, 210 Pa. 311, 59 A. 1082 (1904);  *Martin v. Nat'l Sur. Corp.*, 437 Pa. 159, 166, 262 A.2d 672, 676 (1970).

---

[3] It should be noted that the undersigned inherited these pleadings.  This counsel became involved after the complaint, amended complaint and motion to dismiss were filed. (JA020)

**DEVLIEGER HILSER P.C.**

By:   */s/ Paul T. DeVlieger*
        PAUL T. DEVLIEGER, ESQUIRE
        1518 Walnut Street, Suite 1610
        Philadelphia, PA 19102
        T: (215) 735-9181
        F: (215) 735-9186
        pdevlieger@dvhlaw.com

Dated: October 5, 2016      *Attorneys for Plaintiff, Star Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Paul T. DeVlieger, Esquire, hereby certify that on October 5, 2016,

Appellees, Reginella Construction Company, Ltd., et al. Brief and Joint Appendix

were served electronically via ECF on the following:


Peter H. Kurzweg, Esq.
100 First Avenue, Suite 850
Pittsburgh, PA 15222
T. 412-258-2223
F. 412-258-2224
[pkurzweg@pittsburghlitigationfirm.com](mailto:pkurzweg@pittsburghlitigationfirm.com)

Attorney for Appellees




Dated: October 5, 2016                          /s/ Paul T. DeVlieger
                                                Paul T. DeVlieger, Esquire

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I certify that, according to the word-count feature of the Word Perfect word processing program, the foregoing Brief contains 8,955 words.


Dated: October 5, 2016                    /s/ Paul T. DeVlieger
                                          Paul T. DeVlieger, Esquire

## <u>CERTIFICATE OF TEXT</u>

I, Paul T. DeVlieger, hereby certify that the text of the electronically filed

Brief and the text of the hard copies of the Brief are identical.


Dated: October 5, 2016                                    /s/ Paul T. DeVlieger
                                                         Paul T. DeVlieger, Esquire

## <u>CERTIFICATE OF A VIRUS CHECK</u>

I, Paul T. DeVlieger, hereby certify that a virus check has been performed on the PDF file containing the Brief. The virus check was completed using Microsoft Security Essentials, version 1.229.800.0.

Dated: October 5, 2016 /s/ Paul T. DeVlieger

Paul T. DeVlieger, Esquire

## **CERTIFICATE OF ADMISSION TO BAR**

1.      I am a member in good standing of the Bar of the United States Court

of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that

the foregoing is true and correct.


Dated: October 5, 2016                              /s/ Paul T. DeVlieger_____

                                                    Paul T. DeVlieger, Esquire